

# THE ATTORNEY GENERAL
# OF TEXAS
## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 11, 1950

Hon. C. H. Cavness
State Auditor
Austin, Texas

Dear Sir:

Opinion No. V-1130.

Re: Several questions relating to
filing fees, reports, and per-
petual care funds required of
perpetual care cemeteries.

We quote the following excerpt from your letter of Oc-
tober 4, 1950.

"It will be noted that the present law governing
perpetual care cemeteries (Articles 912a-1 through
912a-27, R.C.S.) was passed by the Forty-Ninth Leg-
islature (House Bill 46) and amended by the Fiftieth
Legislature (House Bill 98). Most past administrations
of the Secretary of State's Office have interpreted Ar-
ticle 912a-5 to exempt from the provisions of the Act
all non-profit, perpetual care cemeteries maintained
by associations of cemetery lot owners. 'Associations'
had been construed to mean either, or both, incorpo-
rated or unincorporated associations. Therefore, such
exempt corporations were not required to file annual
reports on their perpetual care trust funds or pay fil-
ing fees provided by Article 912a-2 and 912a-3 respec-
tively.

"More recently the Secretary of State's Office
has construed Article 912a-5 not to exempt non-profit
corporations, but to exempt from the Act any unincor-
porated associations of cemetery lot owners not oper-
ated for profit, as well as the other specifically named
cemetery operators. In other words, the latter part of
Article 912a-5, which reads in part as follows, ' . . .
or any association of cemetery lot owners not operated
for profit . . . ', is now being interpreted as if it read,
' . . . or any unincorporated association of cemetery
lot owners not operated for profit . . . '. Under this
present interpretation, all corporations operating a per-
petual care cemetery, whether for profit or not, are
required to file the statement as provided by Article
912a-2 and to pay the filing fee provided by Article 912a-
3, unless such corporations fall under one of the other
specific exemptions.

"With reference to the foregoing, our first question is raised by the following facts:

"The Morton Cemetery Association was incorporated on January 20th, 1944. Its charter specifies that the corporation is formed for the purpose of operating a cemetery, that it is organized by cemetery lot owners and that it shall not be operated for profit. /Said charter also specifically provides that the corporation shall operate a perpetual care cemetery./

"Question 1. Is this corporation, organized prior to the enactment of the present statutes, required to file a statement as provided by Article 912a-2 and to pay the filing fee as provided by Article 912a-3?

"Question 2. Should a corporation whose charter provisions are the same as in the case of the Morton Cemetery Association, cited above, but chartered subsequent to the enactment of the present statutes, be required to file a statement as provided by Article 912a-2 and to pay the filing fee as provided by Article 912a-3?"

By letter opinion dated May 9, 1949, we advised Hon. J. M. Falkner, Commissioner, Department of Banking, that an opinion rendered by Judge Ocie Speer, counsel of that department, was correct and that nonprofit perpetual care cemetery corporations are excepted by the proviso appended to Section 2 (Art. 912a-2, V. C.S.) of the present Act and are not required to make annual statements and fee remissions required by said section. We are enclosing herewith a copy of Judge Speer's opinion and a copy of our letter opinion. We adhere to the ruling stated in our letter opinion, and your first two questions are therefore answered in the negative.

We pass to a consideration of two further questions which you have presented for our consideration and quote the following excerpt from your letter:

"The following facts raise an additional question:

"A Dallas corporation is operating two cemeteries, both being perpetual care cemeteries. Only one perpetual care fund is maintained, and only one annual statement is filed with the Secretary of State, and only one filing fee is paid.

"Question 3. Is this combination of the funds permissible under the present statutes?

"Question 4. Should the corporation maintain
two funds separately? Would it need to file separate
statements and pay filing fees for each statement? "

We think that various sections of the Act indicate that
a separate perpetual care fund must be maintained for each per-
petual care cemetery, that annual statements must be filed for each
perpetual care cemetery and that a filing fee must be paid at the
time each such statement is filed. Article 912a-15, which relates
to the establishment of perpetual care funds, expressly provides
that the net income arising from a perpetual care fund "shall be
used solely for the general care and maintenance of the property
entitled to perpetual care in the cemetery for which the fund is es-
tablished." This Article also makes detailed provision for the a-
mount that each cemetery must pay into its perpetual care fund,
the amount being fixed by the number of square feet of ground area
disposed of as perpetual care property and the number of crypt in-
terment rights, mausoleum interments, and niche interment rights
sold as perpetual care property. This provision clearly contem-
plates that the amount of the perpetual care fund for each cemetery
will be determined by the amount of property entitled to perpetual
care. Likewise the information which must be given in the annual
statement regarding the amount of property entitled to perpetual
care is obviously required for the purpose of determining the ade-
quacy of the fund established for the perpetual care of the property.
A copy of the annual statement must be published in at least one
newspaper of general circulation in the county in which the ceme-
tery is located. The information contained in such publication would
be of little value to persons interested in a particular cemetery un-
less it reflected the amount of the perpetual care fund provided for
that cemetery. Moreover, Article 912a-3 requires that the amount
of the filing fee be determined by the size of the city which is served
by the cemetery. Thus if a single corporation operated several per-
petual care cemeteries each serving cities of a different size, this
provision could be complied with only by paying a separate fee for
filing the statement pertaining to each cemetery.

You also request our opinion on the following questions:

"Question 5. Is there any restraint provided by
our statutes which would prevent a perpetual care cem-
etery from dissolving and then obtaining a new charter
as a non-perpetual care cemetery corporation or ceas-
ing to do business as a cemetery company?

"Question 6. If the answer to Question 5 is in
the negative, does the perpetual care fund which re-
mains after the dissolution of the original corporation
remain under the supervision of the State, so that the
annual statement must be filed and the filing fee paid? "

No restraint is provided by our statutes which would prevent a perpetual care cemetery corporation from dissolving. In such cases the cemetery perpetual care fund would be protected by various other provisions of the Act. See particularly Sections 4, 15, and 17. The provisions of Section 2 clearly contemplate the existence of a corporation and therefore cannot be applied to require an annual statement and filing fee after the dissolution of a corporation.

Passing to a consideration of your final question, we again quote from your letter of October 4th:

"The Temple Cemetery Company was chartered in 1884, and its charter expired in 1934. The charter did not provide for a perpetual care fund, yet such a fund was set up before the charter expired. Later in 1934 a new charter was obtained, and its purpose clause called for a non-perpetual care cemetery.

"Question 7. Is the old perpetual care fund which is still in existence subject to State supervision? Must it file the annual statement and pay the filing fee? "

Prior to the enactment of House Bill 122, Acts 43rd Legislature, 2nd C.S. 1934, ch. 66, p. 146, the laws regulating cemeteries were carried in Title 26, Articles 912-931, R.C.S. of Texas, 1925. Although these articles provided for the establishment of a trust fund by persons desiring to provide a fund for maintaining, etc., private blocks or lots in any cemetery in the State,[1] there were no specific provisions for the organization and regulation of perpetual care cemetery corporations. Indeed, Article 929 declared that corporations formed "under this title shall be exempt from any provision of law requiring periodical reports to be made to any department of the State government." By House Bill 122 the 43rd Legislature undertook to regulate perpetual care cemetery corporations and provided for the establishment and protection of perpetual care funds by amending Title 26 of the Revised Civil Statutes of Texas, 1925. House Bill 122 made express provision for such cemeteries as were then operating as perpetual care cemeteries. We quote the following from Section 1, Article 925a, House Bill 122, Acts 43rd Leg., 2nd C.S. 1934, ch. 66, p. 156:

---

[1] A similar provision is carried in Article 912a-18 of the present law in the event that parties desire to provide such a fund for caring for lots in a nonperpetual care cemetery.

"All other cemeteries heretofore operating as perpetual care cemeteries shall, within one year from the effective date of this Act, establish their trust funds in cash or legal securities in conformity with the provisions thereof, and in the event of failure so to do, shall not thereafter operate as a perpetual care or free care cemetery until the provisions hereof are complied with."

The Temple Cemetery Company complied with this provision by obtaining a new charter as a nonperpetual care cemetery. If the old perpetual care fund is still in existence, it is not subject to State supervision in the sense that the requirements of the present Act regulating perpetual care funds must be complied with; and the Temple Cemetery Company need not file the annual statement or pay the filing fee presently required of perpetual care cemeteries.

## SUMMARY

Nonprofit perpetual care cemetery corporations organized by cemetery lot owners are not required to file annual statements concerning perpetual care funds and pay the filing fees required by Articles 912a-2 and 912a-3, V.C.S. A separate perpetual care fund should be maintained for each perpetual care cemetery. The annual statement required by Article 912a-2 must be filed for each perpetual care cemetery, and the filing fee required by Article 912a-3 must be paid at the time such statement is filed. No statute prohibits dissolution of a perpetual care cemetery corporation. Articles 912a-2 and 912a-3 contemplate the existence of a corporation and would not be applicable after the dissolution of a corporation. The old perpetual care fund of a cemetery corporation whose charter expired in 1934, but which obtained a new charter as a nonperpetual care cemetery, is not subject to State supervision, and the new corporation need not file the annual statements and pay the filing fees provided in Title 26, V.C.S.

Yours very truly,

APPROVED:

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

WVG/mwb
Encls.

PRICE DANIEL
Attorney General

By W. V. Geppert
W. V. Geppert
Assistant